CITY OF PADUCAH v. PADUCAH WATER CO.

(Circuit Court of Appeals, Sixth Circuit. March 4, 1919.)

No. 3158.

APPEAL AND ERROR ⊙=781(2)—DETERMINATION OF MOOT QUESTION—SUIT BY WATER COMPANY AGAINST CITY—REPEAL OF ORDINANCE.

Where a water company sued the city to restrain enforcement of an ordinance and resolution, as impairing the obligation of the water supply contract between the company and the city and as depriving the company of its property without due process of law, and the city repealed its ordinance, the question involved became moot, and decree for the company will be reversed and the suit dismissed, despite the fact that the resolution of the city, involving a question of remote rather than present concern, was adopted after the beginning of suit and the repeal of the ordinance.

Appeal from the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Suit in equity by the Paducah Water Company against the City of Paducah. From decree for plaintiff, defendant appeals. Reversed, and cause remanded, with direction to dismiss the suit.

This suit grew out of a question arising in the city of Paducah, whether as respects streets about to be permanently paved the cost of renewing or replacing therein service pipes connecting the water mains with the property lines of consumers should be borne by the water company or by the abutting owners.

The city of Paducah, under an ordinance as amended in October, 1884, granted to J. A. Jones and his assigns the privilege of constructing and operating waterworks, and of laying mains, conduits, and pipes, with fire hydrants, in and along the streets, alleys, avenues, and public grounds of the city, to supply water for both public and private purposes during a term of 40 years, unless the works should be purchased by the city. The Paducah Water Company, a Kentucky corporation, appears to have succeeded to this grant as early as 1887 and to have operated the plant ever since. The ordinance prescribed annual rentals which the city itself undertook to pay during a term of 20 years for the supply of water through certain fire hydrants to be placed on the water mains at points it should select; also general water rates "equal to, but not exceeding, the average rates charged" in five named cities; but the grantee was distinctly required to "furnish water free of

---

⊙=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

charge to all city buildings, public schools, and churches, also one public drinking fountain for man and beast in each ward of the city, at such places as the council may designate, also, one fountain in each and every public park the city may hereafter establish and one in the courthouse square."

While the ordinance forbids under penalty any person or corporation to take or use water from the works "for domestic or other purposes without contracting for same," it makes no specific provision for service pipes, and so does not expressly impose any obligation upon the company nor upon the consumer to pay the cost of installing, connecting, or renewing such pipes. No showing or question is made concerning payment for service pipes used in furnishing water free of charge. It is, however, in substance shown that, from the installation of the water works until the present controversy arose, the service connections and pipes used in supplying water to private consumers were furnished by the abutting property owners and at their expense through plumbers employed by them and licensed by the city; that the water company has uniformly repaired "such pipes between the mains and the property lines when necessary," though where streets were permanently improved under direction of the city the abutting owners have made renewals of service connections and pipes.

On May 30, 1917, the city adopted an ordinance which in effect required the water company upon 10 days' notice to "renew or replace, at its own expense, any service pipes extending from the water mains * * * to the property lines of the water consumers," denounced failure so to do as a misdemeanor and, upon conviction, imposed a fine of $5 for each day the company should fail or refuse to comply with the notice, providing, however, that such notice should not be given "except in the case of service pipes in and under streets to be paved with permanent * * * pavement," and that such renewals or replacements should not be required except where the commissioner of public works should find them to be necessary. On the 1st of June following, notice was given to the company to comply with the measure. This was the first time the city in terms imposed that duty upon the water company.

On June 8th the company commenced the present suit to restrain enforcement of the ordinance, and according to one of the assignments of error a temporary restraining order was granted, though this does not otherwise appear in the record. On the day following, the city adopted an ordinance repealing the one of May 30, 1917, and also passed a resolution rescinding all action taken under the ordinance so repealed, including the service of notice, and the city thereupon set up these facts both by special response and answer to the bill of complaint.

After so attempting to restore the situation existing prior to the ordinance of May 30th, the city on July 9th passed a resolution reciting the existence of an emergency concerning a permanent reconstruction proposed of a portion of Jefferson street and the laying of water pipes therein, and of a controversy as to whose duty it was to lay the connecting pipes between the mains and the property lines, and thereupon providing that the commissioner of public works should notify the water company to commence the laying and connecting of such service pipes, and, in the event of the company refusing or failing so to do, that the commissioner lay and connect such pipes, keeping an account of the cost, which it was further provided should be "charged and collected either from the water company or the private property owners as the courts may determine." Pursuant to the resolution notice was on the same day served by the commissioner upon the company, and the resolution and notice were made the subject of an amendment to the bill.

After hearing, the court entered a decree (December 13, 1917) adjudging in effect that the waterworks ordinance of 1884 constituted a contract between the city and the company; that this contract deprived the city of any right to compel the company to pay the cost of laying service pipes; that the ordinance of May 30th would impair the obligation of the contract in that it would impose upon the company duties and obligations not provided for and not within the power of the city to exact; that inasmuch as the ordinance of May 30th was in force from its date until the adoption of the repealing or-

dinance of June 9th, which was after the suit was begun, some obligations under the provisions of the repealed ordinance might be claimed or attempted to be enforced by the city. And the city was perpetually enjoined from enforcing or attempting to enforce any portion of the repealed ordinance. For similar reasons the city was perpetually enjoined from executing or attempting to execute any provision of the resolution of July 9th as against the company, and the company was allowed its costs. The city appeals.

John K. Hendrick, of Paducah, Ky., for appellant.
D. H. Hughes, of Paducah, Ky., for appellee.

Before WARRINGTON and KNAPPEN, Circuit Judges, and COCHRAN, District Judge.

WARRINGTON, Circuit Judge (after stating the facts as above). We do not see that the facts of the case, above in substance stated, present any question calling for decision. The grounds of the company's complaint are that the effect of the passage and enforcement of the ordinance of May 30, 1917, and the resolution of July 9th following, would be to impair the obligation of the water supply contract of 1884 and also to deprive the company of its property without due process of law. The repeal of this ordinance and rescission of the notice served under it rendered any inquiry into what the effect of its continuance and enforcement would have been upon the rights of the water company simply a moot question. It is the duty of courts to decide only real and pending issues, and not to pronounce judgment upon abstract propositions or moot questions, no matter how the opinion might affect future action in similar circumstances (Mills v. Green, 159 U. S. 651, 653, 16 Sup. Ct. 132, 40 L. Ed. 293; Richardson v. McChesney, 218 U. S. 487, 492, 31 Sup. Ct. 43, 54 L. Ed. 1121); and the question is none the less moot where legislation is the occasion of complaint and is repealed as here during pendency of the suit (Berry v. Davis, 242 U. S. 468, 470, 37 Sup. Ct. 208, 61 L. Ed. 441).

Furthermore, the resolution of July 9th presents a question of remote rather than present concern. The most that can be said of the measure is that in the event of its execution it would impose an obligation of an alternative character as respects the company and the property holders; for the resolution distinctly provides that the city itself shall at its own expense replace the service pipes in Jefferson street upon the mere refusal of the company so to do, and to look for reimbursement to the one or the other source of obligation according as the duty of replacement shall ultimately be judicially determined to rest upon the company or upon the property owners. Clearly, as respects any action that the city might bring against the company to recover the cost it had incurred in replacing the service pipes in Jefferson street, the defense so far as remedy is concerned would be plain, adequate, and complete at law.

It results that the decree must be reversed and the cause remanded, with direction to dismiss the suit; and inasmuch as the ordinance of May 30, 1917, was repealed, and the resolution of July 9th passed, after the suit was begun, the costs in this court will be equally divided